**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

**IN RE**

**NIERZWICKI HOLDINGS, LLC, et al.**                                        **CASE NO. 15-51985**
                                                                              **CHAPTER 11**

**DEBTORS IN POSSESSION**                                                     **JOINTLY ADMINISTERED**

**MEMORANDUM OPINION AND ORDER**

These cases are before the Court on the Motions for Determination that the Automatic Stay Does Not Apply, or in the Alternative, for Relief from the Automatic Stay [ECF No. 24 (Case No. 15-51985) and ECF No. 25 (Case No. 15-51986)][1] filed by 500's on Main Council of Co-Owners, Inc. (the "Council"); the Debtors' Objection [ECF No. 36]; and the Council's Reply [ECF No. 37]. In its motions, the Council seeks permission to proceed with a prepetition lawsuit that it filed in the Fayette County Circuit Court (Case No. 14-CI-762) to enjoin the Debtors' operation of a nightclub that the Council alleges is a noise nuisance (the "Litigation"). A preliminary hearing on these matters was held on November 19, 2015, followed by an evidentiary hearing on December 17, 2015. Having now considered the arguments of counsel, the record and the evidence produced during the evidentiary hearing, the Council's motions are denied, subject to the grant of adequate protection set forth herein.

Prior to the evidentiary hearing, the parties filed Joint Stipulations [ECF No. 53] outlining areas of agreement regarding the underlying facts and the status of the Litigation. In addition, the parties filed several documents in support of their competing claims, including hearing briefs [ECF No. 54 – Council's Hearing Brief, ECF No. 57 – Debtors' Hearing Brief], proposed exhibits

---

[1] The Council's Motions were filed on November 4, 2015, prior to the entry of the Order Authorizing Joint Administration of the Chapter 11 Cases [ECF No. 28] on November 11.

[ECF Nos. 52, 55, and 59 – Debtors' Exhibits; ECF No. 58 – Council's Exhibits] and affidavit testimony [ECF Nos. 46, 47, 48, 49, 50, 51, 60 – Debtors' Affidavits; ECF No. 56 – Council's Affidavits]. Debtors also filed a Supplemental Exhibit [ECF No. 70] after the conclusion of the evidentiary hearing. At the evidentiary hearing, the parties stipulated to the affidavit testimony of the Debtors' witnesses Seth Norat [ECF No. 46], Kenny Mitchell [ECF No. 47] and Cyndie Barone [ECF No. 51]. The other witnesses appeared for cross-examination.

### 1. The Council Must Show that Cause Exists to Justify Relief from the Automatic Stay Under 11 U.S.C. § 362(d)(1).

The automatic stay provided by Section 362 of the Bankruptcy Code is "extremely broad in scope," and in a chapter 11 case "provides breathing space to permit the debtor to focus on rehabilitation or reorganization." 3 COLLIER ON BANKRUPTCY ¶ 362.03 (Alan N. Resnick & Henry J. Sommers eds., 16th ed. 2010).

> Subsection [362](a)(1) provides for a broad stay of legal proceedings against the debtor that were or could have been commenced prior to the commencement of the bankruptcy case, or that seek to recover a prepetition claim against the debtor. It includes a stay against the commencement or continuation of administrative, judicial and other actions or proceedings against the debtor . . . . The stay includes actions seeking injunctive or similar relief as well as actions seeking money judgments.

*Id.* at ¶ 362.03[3] (internal footnote omitted).

The record of the evidentiary hearing reflects a ruling rejecting the Council's argument that the automatic stay did not arise to prevent continuation of the Litigation. The record also contains a ruling denying any claim by the Council that stay relief is required because the Debtors acted in bad faith. Both rulings are adopted and incorporated herein.

The result is that the Council must show that "cause" exists to justify relief from the automatic stay under 11 U.S.C. § 362(d)(1). *See In re Porter*, Case No. 13-20527, 2013 Bankr. LEXIS 3134 at *6 (Bankr. E.D. Ky. Aug. 2, 2013) ("The party requesting stay relief has the initial

burden of proof to make a *prima facie* showing that there is a factual and legal right to the relief sought.")  "In determining whether cause exists, the bankruptcy court must balance the potential hardship that will be incurred by the party seeking relief if the stay is not lifted against the potential prejudice to the debtor and the bankruptcy estate."  *In re United Imps., Inc.*, 203 B.R. 162, 166 (Bankr. D. Neb. 1996).

The parties focused their closing arguments on factors identified in *United Imports* for determination of whether cause exists for relief from the automatic to allow prepetition litigation against a debtor to continue:

1. judicial economy;
2. trial readiness;
3. the resolution of preliminary bankruptcy issues;
4. the creditor's chance of success on the merits;
5. the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors.

*Id.* at 167.  See also *Garzoni v. K-Mart Corp. (In re Garzoni)*, 35 F. App'x. 179, 181 (6th Cir. 2002) (unpublished) (applying *United Imports* factors); *Porter*, 2013 Bankr. LEXIS 3134 at *6 (same).

    2. **The Council has Failed to Show that Cause Exists to Justify Relief from the Automatic Stay.**

        a. **Judicial Economy, Trial Readiness and Resolution of Bankruptcy Issues.**

The first two *United Imports* factors, judicial economy and trial readiness, are not significant.  The lead Debtor, Nierzwicki Holdings, LLC, is a single asset real estate ("SARE") entity, *see* 11 U.S.C. § 101(51B), so the Bankruptcy Code's expedited time table for filing a viable plan of reorganization applies.  *See* 11 U.S.C. § 362(d)(3).  Further, the Debtors have already started the process of marketing the property for a § 363(b) sale.  [*See* ECF No. 61 (authorizing the employment of a real estate broker).]  The state court trial was scheduled to begin just four

3

days after the Debtors filed their petitions, [*see* ECF No. 53], but it seems highly unlikely the state court could get the matter back on its docket before the reorganization or sale process will finish in this court.

The third *United Imports* factor also has little impact on the analysis. There are no significant bankruptcy issues that require action before the Litigation could continue. But all first day motions were approved and the record shows the Debtors are progressing towards a sale and reorganization. This case should proceed promptly because one of the Debtors is a SARE entity. If it does not, the Council will have other remedies to pursue.

The final two *United Imports* factors, the Council's chance of success in the Litigation and the balancing of the harm between the parties, will control this decision.

### b. Likelihood of Success on the Merits.

The evidence produced by each side indicates the Council's likelihood of success is not easily determined. The Council provided information from the state-court record that suggests the Debtors' business might have operated as a nuisance in the past. But the evidence regarding the severity of the noise associated with the Debtors' current operations is mixed. The Debtors shut down their nightclub business in early July 2015 and reopenedon September 4, 2015 [ECF No. 53] with a different music format [*see* ECF No. 48 – Affidavit of Harrison Miller (noting switch to a quieter acoustic format)]. The Debtors provided testimony suggesting the decibel level of the music had decreased substantially and the changes made by the Debtors show that the alleged nuisance from the pre-July 2015 operations is diminished. [*See id.*; *see also* ECF No. 50.]

In addition to the stipulated affidavits, the Debtors offered testimony from Langdon Shoop [ECF No. 49], Steven Herrenbruck [ECF No. 50], and Debra Charise Sutter [ECF No. 60], all of whom testified that they are not bothered by noise from the bar. Gene Glowatch [ECF No. 56-2]

4

and Shelby Skaggs [ECF No. 56-3] said the Debtors continue to play loud music, particularly on weekends, which interferes with their ability to sleep in their units. Ernesto Scorsone [ECF No. 56-1] testified for the Council that he has observed loud noise in the upstairs common areas of the building since the Debtors resumed their operations in September. Among the residents who testified, the conflicting testimony of Ms. Skaggs (Unit 213) and Mr. Herrenbruck (Unit 211) is significant because they are next-door neighbors that live directly above the nightclub on the second floor.

Testimony also suggested that the structure of the building may impact the movement of noise from the nightclub to the condominiums above. Mr. Glowatch testified for the Council that noise (particularly bass sounds) was transmitted through the steel pillars in his apartment. Glowatch further testified that the Debtors offered to install soundproofing insulation around the pillars in his apartment but that he'd refused, preferring to maintain the "industrial look" of his property. Neither party provided any expert testimony to show whether sound transmission is a structural flaw or simply an unavoidable aspect of the building. It is not possible to assess the blame on the Debtors based on the limited information in the record.

The Council also argued that judicial estoppel precludes the Debtors from arguing that Article 8 (Use Restrictions) of the Master Deed [*see* ECF No. 55, Ex. 1-30 – 1-37] affords the Debtors an unfettered right to operate a nightclub with musical entertainment in the building. The legal effect of the language of the Master Deed is ultimately an issue for the state court. For purposes of this ruling, the language in sections 8.3(e) and 8.3(i) of the Master Deed is read to mean that "Nightclub Entertainment" is not expressly prohibited.

But other factors might prevent operation of a nightclub, such as the impact of local zoning regulations and the nuisance laws involved in the state court litigation. Still, the existence of this

5

language in the deed restrictions does indicate that the residents of the building should expect some inconvenience if such enterprise exists. No resident can claim complete surprise that issues associated with operation of a nightclub – patrons coming and going until late at night, music spilling out an open door, occasional debris left by careless customers - occur.

The evidence does not show that the Council will succeed. It merely shows that the Council had a viable case for noise nuisance based on the Debtors' conduct prior to July 2015, and that it might have one now. But the Debtors provided enough evidence to show they have a possible defense based on their current operations. Given the conflicting evidence, the location and nature of the Debtors' business and the applicable deed restrictions, it is impossible to predict that one side or the other is likely to prevail in the Litigation. Accordingly, this factor does little to advance the Council's claim that cause exists to justify relief from the automatic stay.

### c. Balancing the Harm.

Looking at harm, the potential for serious damage to the Debtors' reorganization efforts is obvious. The Debtors must spend a large portion of their limited time and assets to defend the state court action if the Council's request for stay relief is granted. Allowing the Litigation to proceed would effectively preclude the Debtors from reorganizing in bankruptcy in the limited time afforded to a SARE entity. That is a heavy penalty so early in a bankruptcy case.

The Council alleges substantial interference with the quality of life for the residents it represents due to the operation of the Debtors' nightclub business in their condominium building. That is an issue that cannot be tolerated if, in fact, it is true. But the conflicting evidence with respect to noise is not sufficient to overcome the harm to the Debtor if stay relief is granted. Other problems do not sway this decision.

The Council also emphasized issues stemming from nightclub patrons smoking and

6

loitering in common areas outside the building. That is a fact of life for anyone that lives near a commercial bar or restaurant in Fayette County, where smoking indoors is strictly prohibited. The Debtors provided testimony that they were taking steps to limit patrons' illicit use of the common areas. The Debtors and the Council have installed signs that instruct any patron or guest, whether of the nightclub business or a condominium resident, that they should not smoke, drink or loiter on the common area sidewalk. The Debtors also indicated that they instruct employees to enforce this rule.

The Council presented several photographs that show individuals smoking on the sidewalk in front of the Debtors' property. It seems likely these are nightclub patrons, but that was not definitively proven. It was unclear from the testimony whether these photographs were typical or were picked to highlight offensive behavior. Further, it is not clear if these parties had left the nightclub for good, or whether they had entered the business at all. It is hard to place the blame in these instances fully on the Debtors. The place where the parties in many of the pictures are standing includes a sidewalk accessible by the public, which means people coming or going anywhere might walk through or stand in the affected area. There is simply not enough in the pictures to show the temporary inconvenience to the residents imposed by the automatic stay is intolerable.

There is likely inconvenience each time the automatic stay arises in a bankruptcy case. *See, e.g., In re Cardinal Indus., Inc.*, 116 B.R. 964, 983 (Bankr. S.D. Ohio 1990) ("Congress could not have intended that mere delay in enforcing certain rights . . . would be "cause" for lifting the automatic stay. The deprivation of some contractual or state law remedy occurs in virtually every bankruptcy case."). The bankruptcy court should only step in when the impact is so severe that it rises to the level of cause for action. Ultimately, the evidence is insufficient to conclude that the

Debtors' current use of the premises is such that cause exists sufficient for relief from the stay to pursue the Litigation.

### 3. The Automatic Stay Shall Continue in Effect, Subject to the Debtors' Adherence to Certain Conditions.

The evidence is sufficient to conclude that adequate protection is necessary to minimize negative effect of imposition of the automatic stay.  11 U.S.C. § 363(e).  Adequate protection is required as hereafter provided.

It is therefore ORDERED that the Motions for Relief [ECF No. 24 (Case No. 15-51985) and ECF No. 25 (Case No. 15-51986)] are DENIED.  It is further ORDERED that the Debtors shall provide adequate protection as follows:

- Continue to abide by any state-court orders limiting the use of the common area sidewalks.  [*E.g.,* ECF No. 58-3 – Order and Partial Summary Judgment of Fayette Circuit Court (limiting Debtors' use of the sidewalk to transit and access to the building).]

- Promptly remove trash and other debris left by nightclub patrons from common areas and sidewalks.

- Continue intervention by nightclub staff to prevent patrons from congregating and loitering on adjacent sidewalks to "drink, smoke, eat, or conduct any other activity."  [ECF No. 58-3 at 3.]

- Refrain from any coordinated activity with food-truck or food-cart vendors to arrange sales to nightclub patrons.

- Continue reasonable efforts to mitigate any potential noise from nightclub operations that might constitute a nuisance in the manner testified to at the evidentiary hearing.

8

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
Dated: Wednesday, December 30, 2015
(grs)